THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAM WARDLOW, Defendant-Appellant.

First District (2nd Division)   No. 1—96—0094

Opinion filed March 18, 1997.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Morris A. Anyah, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Sam Wardlow was found guilty of unlawful use of a weapon by a felon and was sentenced to two years' imprisonment. The sole issue in this appeal is whether the circuit court erred in denying defendant's motion to suppress the gun that was seized from him during an investigatory stop. For the reasons that follow, we conclude that defendant's motion to suppress should have been granted and we reverse his conviction.

At the hearing on defendant's motion to suppress, Officer Timothy Nolan testified that on September 9, 1995, he and his partner, Officer Harvey, were assigned to the special operations section of the Chicago police department. They were among eight officers in four cars who were driving eastbound on West Van Buren. Officer Nolan's car was last in the line of vehicles driving in the area. Although Officer Nolan could not recall whether his car was marked, he and his partner were in uniform. There was no evidence concerning whether any of the other cars were marked or concerning the clothing of the other officers.

The cars were "caravaning" eastbound down Van Buren, when Officer Nolan observed defendant, who was not violating any laws, standing near the front of 4035 West Van Buren Street. Defendant looked in the officers' direction, then fled. Holding a white bag under his arm, he ran through a gangway and then through an alley. Officer Nolan drove south, observing defendant as he ran. Near 4036 West Congress, defendant ran towards him.

Officer Nolan exited his car and stopped defendant. Without an-

nouncing his office or asking any questions, he conducted a protective pat-down search of defendant. He could not see inside the plastic bag that defendant was carrying. He patted the outside of the bag and "felt a hard object that had a similar shape to a revolver or a gun." Officer Nolan believed the object, which was very heavy, to be a weapon. He looked inside the bag and found a .38-caliber handgun containing five live rounds of ammunition. He then placed defendant under arrest.

Officer Nolan testified that he and the other officers had gone to the area because it was "one of the areas in the 11th District that's high narcotics traffic." Based upon his experience with investigation of areas in which narcotics are sold, Officer Nolan knew that it was common to find weapons in the vicinity of such areas.

The police report indicated that defendant, who was 44 years old, was arrested at 12:15 p.m.

The circuit court denied the motion to suppress. A stipulated bench trial followed, and defendant was found guilty of unlawful use of a weapon by a felon and was sentenced to a two-year term of imprisonment.

In this appeal, defendant contends that the circuit court erred in denying his motion to suppress because his presence in a high crime area and flight from the police officers were insufficient to justify his investigatory stop. We note that although no Illinois court has considered whether sudden flight from police officers in a high crime area justifies a stop, other jurisdictions are divided on the question. Compare *Harris v. State*, 205 Ga. App. 813, 423 S.E.2d 723 (1992), and *State v. White*, 660 So. 2d 515 (La. Ct. App. 1995) (flight from police officers in high crime area justifies investigatory stop), with *People v. Holmes*, 81 N.Y.2d 1056, 619 N.E.2d 396, 601 N.Y.S.2d 459 (1993), *Hopkins v. State*, 661 So. 2d 774 (Ala. Crim. App. 1994), *Britt v. State*, 673 So. 2d 934 (Fla. App. 1996), and *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992) (flight from police officers in high crime area does not justify stop).

Where, as here, there is no challenge to the facts or the credibility of the witnesses, we review a motion to suppress *de novo*. *People v. Foskey*, 136 Ill. 2d 66, 76, 554 N.E.2d 192 (1990); *Ornelas v. United States*, 517 U.S. 690, 700, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996).

■ Under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) (codified at 725 ILCS 5/107—14 (West 1994)), a police officer may stop and detain a person for temporary questioning if the officer reasonably infers from the situation that the person is committing, is about to commit, or has committed a crime. *Terry*, 392

U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880. To justify an investigatory stop, the police officer must be able to point to specific and articulable facts that reasonably warrant the intrusion. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. In determining whether a stop is reasonable, the court employs an objective standard: would an officer of reasonable caution, knowing the facts available at the time of the stop, believe the action was appropriate? *People v. Rivera*, 272 Ill. App. 3d 502, 504-05, 650 N.E.2d 1084 (1995), *appeal denied*, 164 Ill. 2d 577, 660 N.E.2d 1277 (1995).

■ In Illinois, neither a person's mere presence in an area where drugs are sold (*People v. Harper*, 237 Ill. App. 3d 202, 205, 603 N.E.2d 115 (1992)) nor sudden flight (*People v. Rivera*, 233 Ill. App. 3d 69, 77, 598 N.E.2d 423 (1992)) alone will justify a *Terry* stop. Past criminal activity in an area (*People v. Hunt*, 188 Ill. App. 3d 359, 362, 544 N.E.2d 118 (1989), *appeal denied*, 128 Ill. 2d 668, 548 N.E.2d 1074 (1989)) and flight (*Rivera*, 233 Ill. App. 3d at 77), however, are relevant factors to be considered in determining whether circumstances justify an investigatory stop.

For example, in *People v. Rivera*, 233 Ill. App. 3d 69, 76-77, 598 N.E.2d 423 (1992), police officers entered the defendant's bar, having received information that cocaine was stored in the basement and the defendant was involved in its sale and distribution. According to the testimony of the police officers, the defendant appeared frightened and fled when they entered the bar. *Rivera*, 233 Ill. App. 3d at 77. The court found that the flight of the defendant, combined with the information known to the officers, provided the requisite reasonable suspicion. *Rivera*, 233 Ill. App. 3d at 77.

■ From the record before us, we cannot discern the precise location of the area known by the officers to have a high incidence of narcotics trafficking. After he testified that he noticed defendant at 4035 West Van Buren, Officer Nolan was asked why he went to that area. He responded that it was one of the areas in the 11th District that had "high narcotics traffic." His testimony indicates only that the officers were headed somewhere in the general area. There was no evidence that the officers were investigating the specific area where defendant had been standing or that any of the police cars had stopped at that location or that defendant had any basis for believing that police were interested in his activity.

Officer Nolan testified that he was "caravaning" down West Van Buren when he noticed defendant. He did not testify that the officers were targeting 4035 West Van Buren because it was known to be a location where drugs were sold. From the evidence elicited at the hearing on the motion to suppress, it appears that the officers were

simply driving by, on their way to some unidentified location, when they noticed defendant standing at 4035 West Van Buren. The record here is simply too vague to support the inference that defendant was in a location with a high incidence of narcotics trafficking or, for that matter, that defendant's flight was related to his expectation of police focus on him.

Because we find no support in the record for the contention that defendant was in a high crime location, we are left only with the fact of his sudden flight from an area past which police officers were driving. That circumstance alone does not satisfy the requirements for a lawful investigatory stop. *Rivera*, 233 Ill. App. 3d at 77. Accordingly, the circuit court erred in denying defendant's motion to suppress.

We emphasize the limited nature of our holding. Because we recognize the importance of the police interest in investigating crime, we do not hold that the presence of a suspect in a high crime location, together with his subsequent flight from police, is never grounds for a *Terry* stop. Certainly, a "high crime area is a place in which the character of the area gives color to conduct which might not otherwise raise the suspicion of an officer." *White*, 660 So. 2d at 519. To pass constitutional muster, however, the high crime area should be a sufficiently localized and identifiable location. This limitation is necessary to "assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field," simply because he or she happens to live in a neighborhood where crime is prevalent. *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362, 99 S. Ct. 2637, 2640 (1979).

Accordingly, the weapon that was the basis for defendant's conviction should have been suppressed because it was discovered as a result of an unjustified investigative stop. *Wong Sun v. United States*, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417 (1963). Rather than remanding, we reverse defendant's conviction outright because the State will not be able to prevail without the recovered evidence. *People v. Evans*, 259 Ill. App. 3d 650, 659, 631 N.E.2d 872 (1994).

The judgment of the circuit court is reversed.

Reversed.

RAKOWSKI and McNULTY, JJ., concur.