April 7, 1999

                         No. 3--97--1013

_________________________________________________________________

    IN THE

                   APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                           A.D., 1999

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 13th Judicial Circuit,

       )  Grundy County, Illinois,

Plaintiff-Appellee,       )

                                )

v.                         )  No. 96--CF--81

  )

MARTIN RIVERA,                  )  Honorable

  )  Robert H. Adcock,

Defendant-Appellant.       )  Judge Presiding.

________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:             ________________________________________________________________

Defendant Martin Rivera appeals from his conviction for unlawful possession of a controlled substance (cocaine) with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 1996)).  He argues that the trial court erred in denying his motion to quash arrest and to suppress evidence and statements.  For reasons that follow, we affirm in part, reverse in part and remand for a new trial.

FACTS

At the suppression hearing, Grundy County sheriff's deputy Angelo Sallese testified that two weeks prior to defendant's arrest, an informant told him that he could provide information about cocaine coming into the area from Aurora.  The informant was known to Sallese, but he had not previously furnished information to the police.

On September 16, 1996, the informant telephoned Sallese in the afternoon and said that cocaine would be arriving in the Morris area around 7:30 p.m.  At 7:50 p.m., the informant telephoned again and said that the cocaine would be arriving at the Morris Municipal Airport around 8 o'clock in a red Chevrolet Aerostar or Astrovan.  Sallese and his partner, Deputy Loni Harvey, proceeded to the airport, drove through the empty parking lot and parked by a hangar.  At 8 o'clock, the officers received a radio dispatch from Lieutenant Frank Schmitt, who was patrolling the area in an unmarked squad car.  Schmitt said a red Chevrolet van had just pulled into the lot.  As Sallese and Harvey approached in their patrol car, the van started up and moved toward the exit.  Sallese activated his lights, and the van stopped.  Sallese parked behind the van, and Schmitt then pulled his vehicle in front of the van to block it.  Harvey approached the driver, defendant, while Sallese walked up to the passenger.

Harvey testified that after defendant produced his driver's license and identification, Harvey asked where they were going.  Defendant said they were going to Aurora for coffee.  He said the van was his and denied that anything illegal was in it.  Harvey asked if he could search it, and defendant consented.  The defendant exited the van while Schmitt conducted a search.  

Schmitt found an Aldi grocery bag under the driver's seat.  He felt its contents and, without opening the bag, asked defendant if it contained cocaine.  Defendant said, "Yes."  Schmitt asked defendant if the cocaine was his.  Defendant said, "No," and indicated that it belonged to his passenger, Fulgencio Cisneros.  Defendant and Cisneros were then handcuffed and removed from the scene for booking.  Schmitt testified that defendant was not free to go after he admitted that the bag contained cocaine.  Defendant was not given 
Miranda 
warnings until after he arrived at the police station.

The officers testified that a three- to five-minute period elapsed between the initial stop of defendant's van and the point at which he was handcuffed.  A total of six or seven police  officers, including Municipal Area Narcotics Squad (MANS) agents and four or five squad cars, were on the scene.  In addition, Sid Nelson, manager of the Morris Municipal Airport, testified that prior to September 16, 1996, he had requested the sheriff's department to patrol the airport premises after 8 p.m. because of prior burglaries.  By 8 p.m., he said, the restaurant and flight school were closed and it was unusual for vehicles to be in the parking lot. 

Testifying on his own behalf, the defendant stated that the police stopped him immediately after entering the airport parking lot and handcuffed him immediately after he stepped out of the van.  At the close of the evidence, the court denied defendant's motion to quash arrest and to suppress evidence and 

statements.  Defendant was subsequently convicted, as charged, and sentenced to 20 years' imprisonment.

ISSUES AND ANALYSIS

A.  Legality of Stop

Defendant first challenges the legality of the stop based on a tip obtained from an unnamed informant.  He argues that the informant's tip in this case was neither reliable nor adequately corroborated by the police prior to the investigatory stop.

It is well settled that the police may stop any person in a public place for a reasonable period of time if the officer reasonably suspects that the person is committing, or is about to commit a crime.  
Terry v. Ohio, 
392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); 725 ILCS 5/107--14 (West 1996).  An informant's tip may allow an officer to reasonably infer that a person is involved in criminal activity if the information provided is sufficiently reliable.  
Adams v. Williams, 
407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).  The officer's independent corroboration of specific details provided by an anonymous tipster may establish that the informant had access to reliable information and give rise to a reasonable suspicion justifying a 
Terry 
stop.  
Alabama v. White, 
496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990); 
People v. Messamore, 
245 Ill. App. 3d 627, 615 N.E.2d 762 (1993).  On review, this court applies a deferential standard to the trial court's findings of fact and determines the reasonableness of the officer's conduct 
de novo.  People v. Perez, 
288 Ill. App. 3d 1037, 681 N.E.2d 173 (1997).

In this case, the informant, although known to Officer Sallese, had no track record for providing the police with reliable information of criminal activity.  Accordingly, the tip had to be sufficiently detailed and independently corroborated to justify the stop of defendant's van.  Sallese's informant told him (1) the make, model and color of the vehicle--a red Chevrolet Astrovan
(footnote: 1); (2) the vehicle's point of origin--Aurora; (3) the point of arrival in Grundy County--the Morris airport; and (4) the time of arrival--8 p.m.  Except for the vehicle's connection to Aurora, every detail of the tip was corroborated by the police by the time they stopped the defendant, thereby imparting reliability to the tipster's allegation that cocaine would be found in the van.  
Cf. Messamore, 
245 Ill. App. 3d 627, 615 N.E.2d 762; 
People v. Yarber, 
279 Ill. App. 3d 519, 663 N.E.2d 1131 (1996).

Further, because of prior burglaries and the fact that no airport offices were open for business at 8 p.m., the presence of a vehicle in the airport parking lot was an independent cause for police concern.  Under the circumstances, we hold that the arresting officers reasonably suspected defendant was involved in criminal activity and that the investigatory stop was justified.  See 
White, 
496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412; 
People v. Spreigel, 
233 Ill. App. 3d 490, 599 N.E.2d 191 (1992).  Accordingly, the court did not err in denying defendant's motion to quash arrest and suppress physical evidence.

B.  Interrogation Prior to 
Miranda 
Warnings

Defendant also argues that his statements to the police after Officer Schmitt removed the grocery bag from the van should have been suppressed.  Specifically, defendant contends that he was in custody immediately after stepping out of the van and that any police interrogation after that point could not be made without the benefit of 
Miranda 
warnings.

Statements obtained from a person as a result of a custodial interrogation are subject to suppression if the person fails to receive warnings of (1) his right to remain silent; (2) that any statement he makes may be used against him; (3) that he has a right to the presence of an attorney; and (4) that if he cannot afford an attorney, one will be appointed for him.  
Miranda v. Arizona, 
384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).  An interrogation includes any words or actions by the police that are reasonably likely to evoke an incriminating response.  
Rhode Island v. Innis, 
446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980).  A custodial interrogation occurs when police question a person after he has been taken into custody or deprived of his freedom of movement in any significant way.  
People v. Brown, 
136 Ill. 2d 116, 554 N.E.2d 216 (1990).

Factors to be weighed in determining whether an interrogation is custodial include the location, time, length, mood and mode of the interrogation; the number of police officers present; the presence or absence of the accused's family or friends; any indicia of formal arrest; whether the accused is allowed to walk from the location of the interrogation unaccompanied by police; and the age, intelligence and mental makeup of the accused.  
People v. Savory, 
105 Ill. App. 3d 1023, 435 N.E.2d 226 (1982).  On review, the trial court's ruling as to whether a custodial interrogation occurred will not be disturbed unless it is contrary to the manifest weight of the evidence.  
People v. Pierce, 
285 Ill. App. 3d 5, 673 N.E.2d 750 (1996).

In this case, it is undisputed that no fewer than six police officers and four squad cars were on the scene and assisting in the investigative stop when Schmitt asked defendant if there was cocaine in the Aldi bag.  Defendant's van was blocked front and rear.  It was clear before Schmitt posed his question that defendant was going nowhere without a police escort.  After feeling what he suspected was a brick of cocaine in the bag, Schmitt asked defendant a short, direct question that demanded an immediate response: "Is this cocaine?"  

Under these circumstances, the fact that no weapons were drawn and the officers did not raise their voices did not render the heavily police-dominated environment non-custodial.  The officers' general, on-the-scene investigatory purpose had ended when the bag of suspected cocaine was removed from the van.  At that point, the officers' reasonable suspicion of criminal activity had developed into probable cause to believe that defendant was involved in a cocaine delivery, and defendant immediately became the prime focus of the investigation.  Thus, even accepting the officers' testimony that defendant was not handcuffed until after the question was answered, defendant was entitled to 
Miranda 
warnings.  See 
People v. Gan, 
75 Ill. App. 3d 72, 394 N.E.2d 611 (1979).  We hold that the trial court's ruling to the contrary was manifestly erroneous, and statements elicited prior to receiving the warnings should have been suppressed.

Our inquiry does not end with the finding of a 
Miranda 
violation.  Rather, we must determine (in this case without the benefit of the parties' legal arguments) whether the erroneous admission of defendant's pre-
Miranda 
statements was harmless error.  
People v. Savory, 
105 Ill. App. 3d 1023, 435 N.E.2d 226 (1982).

Trial error is harmless beyond a reasonable doubt if, absent the erroneously admitted evidence, the prosecution's evidence remains so overwhelming as to establish the defendant's guilt beyond a reasonable doubt.  
People v. Szerletich, 
86 Ill. App. 3d 1121, 408 N.E.2d 1098 (1980); 
Harryman v. Estelle, 
616 F.2d 870 (5th Cir. 1980).  Our analysis requires a review of the evidence adduced at trial and the effect that the erroneously admitted evidence had on the trial and the conduct of the defense.  
Harryman, 
616 F.2d 870.

At trial, the prosecution presented theories of constructive and shared possession and accountability.  An element of the State's case was that defendant knew of the presence of the contraband.  
People v. Valdez, 
230 Ill. App. 3d 975, 595 N.E.2d 1245 (1992); 
People v. O'Neal, 
139 Ill. App. 3d 791, 488 N.E.2d 277 (1985).  Conceding that the Aldi bag was not transparent, the prosecution's key evidence of defendant's knowledge was his response to the officer's pre-
Miranda 
interrogation.

The prosecution presented corroborative evidence through Officer Plomero, who read defendant his 
Miranda 
rights and interrogated him in Spanish at the police station.  Plomero testified that defendant did not deny knowledge of the cocaine in his post-
Miranda 
statements at the police station.  However, on cross-examination, Plomero said he could not recall asking the defendant if he knew what was in the Aldi bag before Officer Schmitt mentioned cocaine.  Defense counsel established that Plomero's interrogation concerned only how the bag got into defendant's van, not whether defendant knew what was in it.

For the defense, defendant testified that the Aldi bag was brought into the van by co-defendant Cisneros.  Cisneros stuck the bag under the driver's seat when they spotted the squad cars.  Defendant said he did not know what was in the Aldi bag.  He said he first knew about the cocaine when the police asked who owned the cocaine in the bag.  Defendant testified that English is his second language and that he was confused and just said "yes" when the officer said it was cocaine.  The defense theory was that the police blurted out that they had cocaine before defendant said anything and that, surrounded by the police, the defendant simply was not about to argue with anything the police said.

Under these circumstances, we find that, while the evidence
 
may be sufficient to support a conviction without the pre-
Miranda 
statements, we cannot say based solely on the record before us that the evidence was so overwhelming as to establish defendant's guilt beyond a reasonable doubt.  It is for the trier of fact, not this court, to determine whether there remains sufficient competent evidence to prove the elements of the offense.  Accordingly, this cause must be remanded for a new trial.  See 
Szerletich, 
86 Ill. App. 3d 1121, 408 N.E.2d 1098.

CONCLUSION

The judgment of the circuit court of Grundy County is affirmed in part, reversed in part and remanded for a new trial.

Affirmed in part; reversed in part; remanded.

HOLDRIDGE, P.J., and LYTTON, J., concur.

FOOTNOTES
1:
The evidence established that an Aerostar is a Ford van.