25 January 2000

 No. 3--99--0328

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2000

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit,

 ) Will County, Illinois

Plaintiff-Appellant, ) 

 )

v. ) No. 98--CF--1771

 ) 

JOHNNY C. LOCKHART, ) Honorable

                                ) Martin Rudman

Defendant-Appellee. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

The defendant, Johnny C. Lockhart, was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)).  He filed a motion to suppress the evidence recovered from the warrantless search of his person.  The trial court granted his motion, and the State appeals.  We affirm.

FACTS

At the suppression hearing, the defendant testified that he went to the house at 305 Western in Joliet to speak to a man named "John" who lived at the house.  The defendant did not know John’s last name, although he had known John for approximately six months.  The defendant’s conversation with John lasted less than five minutes.

When the defendant left the home, he saw a police officer looking over the fence at the home’s back door.  The defendant testified that he continued about his business and walked down the street.  When the defendant arrived at the intersection of

Western and Pine, the police officer was there and his police car was blocking the defendant’s path across the street.  Two other police cars were nearby.  Two of the three police cars had their red lights activated.

According to the defendant, the police officer he had seen watching the back door of the home at 305 Western approached him.  The officer asked if the defendant had come from 305 Western.  The defendant answered that he had.  The officer then asked what the defendant was doing there, and the defendant replied that he had been visiting John.  Finally, the officer asked if he could search the defendant, and the defendant said that he could not.  By this time, a second police officer was standing directly behind and within arm’s reach of the defendant.  The first officer indicated to the defendant that he intended to search the defendant regardless of the defendant’s refusal to consent.  The officer put on fingerless gloves and removed the disputed evidence from the defendant’s pocket.

The officer who searched the defendant, Officer Stefanski, also testified at the suppression hearing.  Officer Stefanski stated that other officers had made previous drug arrests at the house at 305 Western in Joliet.  It was located in a mostly residential neighborhood which contains two to three high-drug-

traffic areas.  Officer Stefanski testified that several area residents had complained to him about "drug traffic" at 305 Western.  On the night of the defendant’s arrest, the resident of the home across the street from 305 Western complained to Officer Stefanski that there was a lot of automobile traffic on the street.  The resident tied this traffic to the high number of people going into and out of the back door of 305 Western.  All of these people left the home within a short time after entering it.

As a result of the neighbor’s complaint, Officer Stefanski and a colleague began watching the back door of 305 Western.  Officer Stefanski testified that they watched for approximately 15 minutes.  During this time, he saw two people enter and leave two minutes later.  The second officer saw three to four people enter and leave two minutes later.  One of these persons was the defendant.

Officer Stefanski decided to stop the defendant for questioning.  Officer Stefanski confirmed that there were three police vehicles present, and three officers as well.  He acknowledged that one officer stood behind the defendant.  Officer Stefanski testified that he asked the defendant his name and where he had come from.  The defendant told the officer his name but would not say from where he had come.  Officer Stefanski then asked the defendant if he possessed anything illegal.  The defendant answered that he did not and that the officer was free to check.  When Officer Stefanski searched the defendant, he found a substance he suspected was cocaine in the defendant’s pants pocket.

After hearing the testimony of the witnesses, the trial judge found that the defendant had consented to the officer’s search.  However, the judge found that Officer Stefanski lacked a reasonable, articulable suspicion to justify the stop of the defendant.  Since the defendant’s consent to search was the product of the illegal search, the court held that the evidence seized by Officer Stefanski should be suppressed.

ANALYSIS

The sole issue on appeal is whether the stop of the defendant was supported by specific and articulable facts which gave rise to a reasonable suspicion that the defendant was involved in criminal activity.

An investigatory stop of a private citizen is allowed only when the police officer has specific, articulable facts which, when taken together with rational inferences, create a reasonable suspicion that the private citizen is involved in criminal activity.  725 ILCS 5/107--14 (West 1994); 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).
  
In the instant case, the facts essential to a determination of whether Officer Stefanski had specific, articulable suspicion are not in dispute.
  When a trial court's decision on a motion to suppress involves no factual or credibility disputes, the appellate
 court may review that decision 
de
 
novo
.  
People v. Wright
, 183 Ill. 2d 16, 697 N.E.2d 693 (1998).

1. Prior Arrests 

The State contends that Officer Stefanski's knowledge of prior drug arrests at the residence provided him with the reasonable suspicion necessary to stop the defendant.  In support 

of this argument, the State cites 
People v. Graves
, 281 Ill. App. 3d 386, 667 N.E.2d 96 (1996).  In 
Graves
, controlled drug purchases by an informant were completed at the house in question during the week preceding the defendant's arrest.  Morever, within two hours of the defendant's arrest, four other people exiting the house had been arrested for unlawful drug possession.

In the instant case, Officer Stefanski did not give any details regarding the prior arrests that took place at 305 Western Avenue.  As the defendant points out in his brief, these arrests might have taken place months or even years prior to the defendant's arrest, possibly when different residents occupied the dwelling.  Consequently, 
Graves
 is readily distinguishable on its facts. 

More instructive to this issue is the case of 
People v. Harper
, 237 Ill. App. 3d 202, 603 N.E.2d 115 (1992).  In 
Harper
, two police officers stopped the defendant after he exited a "known dope house."  
Harper
, 237 Ill. App. 3d at 205, 603 N.E.2d at 116.  The defendant had parked his car near the building, entered it and remained less than a minute before departing.  Upon stopping him, officers uncovered a packet of cocaine that the defendant had concealed in his mouth.  At the time they stopped the defendant, one of the officers had personally participated in a search of the premises which uncovered drug paraphernalia nine months earlier.  Since that time, the officer had arrested seven individuals near the building who possessed narcotics.  Despite these facts, the appellate court held that the evidence must be suppressed.  In so ruling, the court stated that the officers' decision "to stop defendant was based on no more than a hunch that he might be involved in drug activity."  
Harper
, 237 Ill. App. 3d at 206-07, 603 N.E.2d at 117.

Based upon the foregoing analysis, we conclude that Officer Stefanski's "knowledge" of prior drug arrests at 305 Western was insufficient to provide him with specific, articulable suspicion to stop the defendant.

2. Informants' Tips

The State further argues that the past tips from area residents and from the neighbor the night of the arrest supplied Officer Stefanski with reasonable suspicion to stop the defendant.  An informant's tip may allow an officer to reasonably infer that a person is involved in criminal activity if the information provided is reliable.  
People v. Rivera
, 304 Ill. App. 3d 124, 709 N.E.2d 710 (1999).  When a tipster has no track record for providing the police with reliable information of criminal activity, however, the tip must be sufficiently detailed and independently corroborated to justify a stop.  
Rivera
, 304 Ill. App. 3d at 127, 709 N.E.2d at 713. 

The tips at issue in this case were either insufficiently detailed or lacked independent corroboration by Officer Stefanski.
  While Officer Stefanski testified that he had received complaints from several area residents about "drug traffic" at 305 Western, no particulars were furnished concerning the identity of the complainants, the specifics of the alleged drug activity, or when the complaints were made.  Consequently, there was neither sufficient detail nor independent corroboration by Officer Stefanski to support a reasonable suspicion of recent criminal activity at that location.  While the tip given by the neighbor that evening
 was fresh and independently corroborated by Officer Stefanski, it pertained only to the comings and goings of visitors to the residence at 305 Western Avenue.  The neighbor did not claim to have witnessed any criminal activity.  Officer Stefanski's surveillance of the residence lasted only 15 minutes.  During this time, he and his colleague observed several individuals enter and exit the residence.  However, they did not observe any drug transactions and could not see what the defendant did once he entered the residence.  Consequently, we cannot say that the tips relied upon by Officer Stefanski were sufficient to justify his stop of the defendant.  
See 
Harper
, 237 Ill. App. 3d at 205, 603 N.E.2d at 117.  
As a result, the trial court's ruling that the tips in this case did not provide a reasonable, articulable suspicion to stop the defendant was not erroneous.

CONCLUSION

Having found that the trial court did not err in ruling that the stop was illegal, it necessarily follows that the evidence subsequently recovered was properly suppressed.  See 
People v. Wardlow
, 287 Ill. App. 3d 367, 678 N.E.2d 65 (1997) (evidence discovered as a result of an unjustified investigative stop should be suppressed under the "fruit of the poisonous tree" doctrine).

For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.

LYTTON and KOEHLER, JJ., concurring