THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH E. SMITH, Defendant-Appellant.

Third District   No. 3—01—0772

Opinion filed June 27, 2002.

Mark D. Fisher (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Deidre Donnellan (argued), of Plainfield, for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Joseph Smith was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2000)) at the conclusion of a stipulated bench trial and he was sentenced to a term of two

years' probation. On appeal, the defendant contends that the trial court erred in denying his motion to suppress. We reverse.

## Facts

The only witness to testify at the suppression hearing was Officer Darrell Gavin of the Joliet police department. Gavin and his partner, Officer Jose, were on patrol on November 24, 2000, when they saw the defendant at 1:43 a.m. walking in the Fairmont housing project in Joliet, Illinois. The defendant had his hands clenched, and Gavin saw the defendant put something into one of his coat pockets. Gavin decided to question the defendant because Joliet has a "trespass agreement" with Fairmont which requires a "pass" to be in the housing project. However, before the officers reached the defendant, he crossed the street, thereby leaving the housing project and the City of Joliet and entering Lockport, Illinois.

By the time Officers Gavin and Jose drove around to the defendant's location, he was standing in front of a building that Gavin described as a "known drug house." Gavin testified that the defendant was not doing anything other than simply "[s]tanding there with his hands in his pockets." The two officers got out of their squad car, approached the defendant and asked him what he was doing. The defendant replied that he was waiting for his cousin. Officer Gavin then asked the defendant what he had in his pockets and the defendant did not answer. Gavin told the defendant to take his hands out of his pockets and the defendant appeared to become nervous and looked around.

Next, Gavin initially testified that the defendant turned and began to walk away. After reviewing his written report, however, Gavin testified that the defendant began to back away from the officers. The officers told the defendant to stop and to take his hands out of his pockets. The defendant continued to back away and kept his hands in his pockets. After asking the defendant "a few more times" to take his hands out of his pockets, both officers grabbed the defendant's arms. After the defendant began to struggle, the officers forced him to the ground and placed him under arrest. A subsequent search disclosed that defendant was in possession of one-tenth of a gram of cocaine.

Officer Gavin admitted that he had no idea what the defendant might have had in his pockets. He also acknowledged that he never asked the defendant if he had a "pass" for the Fairmont housing project. At the conclusion of the hearing, the trial court denied the defendant's motion to suppress.

## Analysis

Defendant asserts that the trial court erred in denying his motion

to suppress because: (1) the Joliet police officers had no jurisdiction to arrest him in Lockport; and (2) the officers had no justification for detaining, frisking or arresting him and therefore violated his rights under the fourth amendment. Because we find that the latter contention requires reversal of the defendant's conviction, we do not address the jurisdictional argument.

■ A ruling on a motion to quash arrest and suppress evidence is generally subject to reversal only if it is manifestly erroneous. *People v. Krueger*, 175 Ill. 2d 60, 675 N.E.2d 604 (1996). However, where, as here, neither the facts nor the credibility of witnesses is at issue, *de novo* review is appropriate. See *People v. Dilworth*, 169 Ill. 2d 195, 661 N.E.2d 310 (1996).

■ The fourth amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. However, the fourth amendment was not intended to eliminate all contact between citizens and the police, but to prevent arbitrary and oppressive interference with an individual's privacy and personal security. *United States v. Mendenhall*, 446 U.S. 544, 553-54, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). Thus the police do not violate the fourth amendment by merely approaching an individual on the street and putting questions to him if the person is willing to listen. *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983).

> "The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citations.] He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.

The State contends that the initial encounter between the defendant and Officers Gavin and Jose involved no coercion or detention and was a consensual police-citizen interaction. We agree. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 905 n.16, 88 S. Ct. 1868, 1879 n.16 (1968); see also *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991) ("Since *Terry*, we have held repeatedly that mere police questioning does not constitute a seizure"). In this case there was initially no seizure because the defendant was already stopped, standing in front of a "known drug house." Furthermore,

when the officers left their vehicle and asked the defendant what he was doing, he was not seized. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry*, 392 U.S. at 34, 20 L. Ed. 2d at 913, 88 S. Ct. at 1886 (White, J., concurring).

Of course, the defendant was free at that point to answer the officers' questions or ignore them; he could also remain where he was or simply walk away. See *Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324. Defendant chose to respond to the question about what he was doing but to ignore the question concerning the contents of his pockets. Somewhere in the sequence of events which followed, a seizure occurred: (1) defendant was told to take his hands out of his pockets; (2) defendant became nervous, looked around and began to back away from the officers; (3) defendant was told to stop and to take his hands out of his pockets; (4) defendant continued to back up and kept his hands in his pockets; (5) defendant was told a few more times to take his hands out of his pockets; and (6) the officers grabbed the defendant's arms.

■ A person is seized within the meaning of the fourth amendment when the police, by means of physical force or show of authority, have in some way restrained that person's liberty. *Terry*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16. That is, a seizure occurs if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. Alternatively, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387. In *Mendenhall*, the Court gave examples of circumstances that might indicate a seizure, including: (1) the threatening presence of several officers; (2) displaying a weapon; (3) physical touching of the defendant; or (4) using language or a tone of voice indicating that compliance with the officer's request might be compelled. *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; see also *People v. Murray*, 137 Ill. 2d 382, 560 N.E.2d 309 (1990).

■ Under other circumstances we would find that a seizure occurred no later than when the defendant was told to stop and to remove his hands from his pockets. At that point the defendant had begun to back away from the officers, indicating his intent to leave. The officers just as clearly indicated their intent that he remain. However, because the defendant did not submit to the officers' commands, but continued to back away, no seizure occurred at that point. It was not until the officers physically restrained the defendant that

he was seized. See *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991) (assertion of authority by police does not constitute seizure unless defendant submits); see also *People v. Ramirez*, 244 Ill. App. 3d 136, 613 N.E.2d 1116 (1993) (following *Hodari D.*). Therefore, we must decide whether the police had valid justification for seizing the defendant at that time.

■ "An investigatory stop of a private citizen is allowed only when the police officer has specific, articulable facts which, when taken together with rational inferences, create a reasonable suspicion that the private citizen is involved in criminal activity." *People v. Lockhart*, 311 Ill. App. 3d 358, 361, 724 N.E.2d 540, 542 (2000). Mere hunches and unparticularized suspicions are not sufficient. *People v. Moore*, 286 Ill. App. 3d 649, 676 N.E.2d 700 (1997).

■ The State argues that the following factors established reasonable suspicion sufficient to warrant a *Terry* stop: (1) defendant was in a high crime area at night; (2) defendant began to look around nervously and back away from the officers; (3) defendant refused to remove his hands from his pockets; and (4) defendant attempted to "flee" from the officers.

The mere fact that a person is in a high crime area is not sufficient to support a reasonable suspicion that a person is committing a crime, although it is "among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 676 (2000). Similarly, we do not believe that the lateness of the hour justifies a *Terry* stop, although it may be a factor contributing to a reasonable suspicion. And while nervous behavior has been recognized as a pertinent factor (*Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676), it "is not a characteristic that generally invokes reasonable suspicion" (*People v. Penny*, 188 Ill. App. 3d 499, 503, 544 N.E.2d 1015, 1017 (1989); see also *People v. Smith*, 315 Ill. App. 3d 772, 734 N.E.2d 1039 (2000)). As for defendant's behavior in backing away from the officers and refusing to remove his hands from his pockets, his acts were consistent with his right, in the context of a consensual police-citizen encounter, to ignore the police requests and go on his way. Moreover, his exercise of those rights cannot be used to justify a *Terry* stop. See *Royer*, 460 U.S. at 498, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324 (citizen's refusal to listen or answer questions does not, without more, furnish grounds for detention). After all, consensual encounters do not implicate the fourth amendment only *because* they are consensual. To hold that exercising the right to refuse to answer and going about one's business supplies the basis for reasonable suspicion creates a "heads I win, tails you lose" situation for the State, with the fourth amendment as the loser.

Finally, the State's characterization of defendant's conduct as "unprovoked attempted flight," and its attempt to rely on *Wardlow* merit little comment. As we have explained, the defendant's actions were consistent with his right to terminate the consensual encounter with Officers Gavin and Jose. The "headlong flight" which justified a *Terry* stop of the defendant in *Wardlow* (528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676) bears no resemblance to the instant defendant's conduct.

Viewed individually, then, defendant's actions were not sufficient to cause a person of reasonable caution to believe that defendant was engaged in criminal activity. However, facts and circumstances that might appear innocent when viewed independently may provide reasonable suspicion when viewed in their entirety. *People v. Lockett*, 311 Ill. App. 3d 661, 725 N.E.2d 27 (2000).

> "In deciding whether a reasonable suspicion existed, we must consider the ' "totality of the circumstances—the whole picture" ' of each case. [Citation.] We recognize that a reasonable suspicion may emerge from seemingly innocent, noncriminal conduct. [Citation.] The question for the court is the degree of suspicion which attaches to the circumstances surrounding a defendant's actions. [Citation.] The facts used to support an investigatory detention are insufficient when they describe 'a very large category of presumably innocent travelers, who would be subject to virtually random seizures.' [Citation.]" *People v. Anaya*, 279 Ill. App. 3d 940, 945-46, 665 N.E.2d 525, 529 (1996).

We believe that, considering the totality of the circumstances as they existed on November 24, 2000, there were insufficient specific, articulable facts to create a reasonable suspicion that defendant was committing a crime. Essentially, defendant put something in his pocket (drugs, a knife, cigarettes, keys, gum?) while walking late at night. He then stood in front of a known drug house with his hands in his pockets. Nothing about this activity suggests criminal conduct. Certainly, putting something in one's pocket is not a hallmark of criminal activity. See *People v. F.J.*, 315 Ill. App. 3d 1053, 734 N.E.2d 1007 (2000); *People v. Anderson*, 304 Ill. App. 3d 454, 711 N.E.2d 24 (1999). Nor did defendant's presence in the vicinity of a house where drugs had been sold in itself create a reasonable suspicion. See *Lockhart*, 311 Ill. App. 3d 358, 724 N.E.2d 540 (fact that defendant entered and quickly left house where prior drug arrests had been made did not establish reasonable suspicion to stop defendant); *People v. Harper*, 237 Ill. App. 3d 202, 205, 603 N.E.2d 115, 116 (1992) (no reasonable suspicion where defendant was stopped after exiting "known dope house"). With respect to defendant's nervous behavior, we believe it is

significant that, according to Officer Gavin's testimony, defendant did not become nervous until after he was told to remove his hands from his pockets. Such an order may have been considered by the defendant as a signal that what had been a casual inquiry was now the prelude to something more serious, thereby creating anxiety. Finally, we do not believe that defendant's decision to keep his hands in his pockets and terminate the "consensual encounter" can provide the basis for reasonable suspicion, for the reasons stated earlier. We hold, therefore, that defendant was improperly seized in violation of the fourth amendment. The circuit court's ruling denying the defendant's motion to suppress is accordingly reversed. In addition, because the State cannot prevail on remand without the suppressed evidence, we reverse the defendant's conviction and vacate his sentence.

For the reasons stated above, the judgment of the circuit court is reversed.

Reversed.

LYTTON, P.J., and McDADE, J., concur.