**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220001-U

Order filed July 13, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-22-0001 Circuit No. 20-CF-416 |
| GAVIN P. JONES, | ) ) | Honorable Raymond A. Cavanaugh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: The circuit court did not err when it denied the defendant's motion to suppress evidence.

¶ 2      The defendant, Gavin P. Jones, appeals his conviction for unlawful possession of methamphetamine. The defendant argues that the Knox County circuit court erred in denying his motion to suppress.

¶ 3      I. BACKGROUND

¶ 4    The State charged the defendant by information with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) and unlawful possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2020)). The defendant filed a motion to suppress evidence, alleging that he was unlawfully seized by officers following a foot pursuit.

¶ 5    The court held a hearing on the defendant's motion where the following evidence was adduced. Officer Maverick Rasmussen testified that, on July 2, 2020, at 2 p.m., he and Officers Scott Simmons and Kwan Cheuk went to 216 Allens Avenue in Galesburg in an attempt to locate a white male with a felony warrant named Michael Hengl. Rasmussen and Simmons approached the residence from the southeast side while Cheuk approached from the northeast side. Cheuk made contact with a person in the driveway, and Rasmussen saw a white man, later identified as the defendant, run around the corner of the residence toward him. As soon as the defendant saw Rasmussen, he turned around and ran back in the direction from which he came, which was toward the northwest side of the residence. When the defendant turned around and ran, Rasmussen observed that the defendant's hand was behind his back, and he was reaching toward his back right pocket. Rasmussen did not see anything in his pocket. Rasmussen announced he was the police and told the defendant to stop. Rasmussen then began to chase the defendant as he ran toward Cheuk. Rasmussen reached the defendant and placed him in handcuffs.

¶ 6    Rasmussen asked the defendant if he had any weapons on him and for his identification. He identified the defendant, who then informed Rasmussen that he had a pocketknife in his front right pocket. Rasmussen conducted a pat down to ensure there were no other weapons and felt another pocketknife in the defendant's front left pocket. He informed the defendant that he was going to retrieve the pocketknife but there were two objects preventing him from reaching his hand into the defendant's pocket. Rasmussen told the defendant he was going to remove the objects.

2

The items were two bundled sums of cash totaling $2100 and a clear plastic bag containing a white crystal substance. The substance later field tested positive for methamphetamine. Rasmussen removed the second pocketknife and placed the defendant in the back of the squad car. The officers retraced the defendant's flight path and found a loaded .38-caliber handgun.

¶ 7          Rasmussen testified that, at the time they observed the defendant, there was no reason to believe there had been any reports of criminal activity at the residence and they did not see the defendant committing any criminal activity. The officers were in uniform with their service weapons and arrived in marked patrol vehicles. When Rasmussen wrote his police report, he learned that Hengl, the subject of the felony warrant, was 20 years old, six feet, two inches tall, and 220 pounds. The defendant was 46 years old, 5 feet, 11 inches tall, and 190 pounds.

¶ 8          Cheuk testified that he approached the residence from the northeast side. He observed a blond man at the back of the driveway talking to an individual and waved at them. Cheuk learned the blond man was John Thurman. While talking to Thurman, Cheuk saw a bearded man run around the northeast corner of the house toward them. The man slowed to a walk as Rasmussen was behind him ordering him to stop.

¶ 9          The court denied the motion and found that the furtive motion and unprovoked flight were enough to justify a *Terry* stop and a protective pat down. The defendant filed a motion to reconsider, arguing that there was insufficient information for Rasmussen to reasonably believe that the defendant was or could be Hengl when all he knew at the time was that Hengl was a white male. The defendant also argued that the incident did not occur in a high-crime area nor was there evidence of criminal activity. The court denied the motion, finding that the officers had a valid warrant for an unknown white male and observed a white man with two instances of flight.

¶ 10          The State proceeded to a jury trial on the unlawful possession of methamphetamine charge.

3

Officers Rasmussen and Cheuk testified similarly to how they did at the suppression hearing. A forensic scientist testified that the plastic bag recovered from the defendant's pocket contained 0.3 grams of powder comprised of a mixture of methamphetamine and buprenorphine. The jury found the defendant guilty. The defendant filed a motion for a new trial asserting that the court's denial of his motion to suppress was erroneous. The court denied the motion and sentenced the defendant to three years' imprisonment. The defendant appeals.

¶ 11                                    II. ANALYSIS

¶ 12        The defendant argues that the court erred when it denied his motion to suppress. Specifically, he argues that (1) he was unlawfully seized, and (2) even if the officers had a reasonable articulable suspicion to conduct a *Terry* stop, they lacked probable cause to arrest him.

¶ 13        The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) protect individuals from unreasonable searches and seizures. Police-citizen encounters are divided into three categories: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or *Terry* stops, which must be supported by reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention, and therefore, do not implicate fourth amendment interests. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006).

¶ 14        This court applies a mixed standard of review when examining a ruling on a motion to suppress evidence. *People v. Heritsch*, 2017 IL App (2d) 151157, ¶ 8. The circuit court's factual findings are afforded great deference and are reversed only if they are against the manifest weight of the evidence. *Id.* However, we review the court's ultimate decision to grant or deny the motion *de novo*. *People v. Close*, 238 Ill. 2d 497, 504 (2010). When reviewing the propriety of a *Terry* stop, we must decide each case on its own unique facts. *People v. Colyar*, 2013 IL 111835, ¶ 37.

4

¶ 15    The parties do not dispute that a *Terry* stop occurred in this case. The defendant argues that such a stop was not supported by reasonable, articulable suspicion of criminal activity. A lawful *Terry* stop requires that the officer "have a 'reasonable, articulable suspicion' that criminal activity is afoot." *People v. Timmsen*, 2016 IL 118181, ¶ 9. Although this standard is less demanding than probable cause, the officer's suspicion must amount to more than a hunch of criminal activity. *Id.* The officer must be able to point to specific facts, taken with rational inferences, that reasonably warrant the governmental intrusion upon the private citizen's protected interests. *Id.*

¶ 16    The defendant argues that merely running away from an officer does not justify a seizure and it is well-settled that that refusal to cooperate does not rise to the level of objective justification for a detention or seizure. We agree that an individual's refusal to cooperate, without more, does not amount to reasonable suspicion. See *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (the defendant's presence in a high-crime area as well as unprovoked flight upon seeing police officers amounted to reasonable suspicion). To that same point, when an officer approaches an individual without reasonable suspicion or probable cause, the individual has the right to ignore the police and go about his business. *Id.* However, flight, by its very nature, is the opposite of going about one's business. *Id.* "Evasive behavior and a person's refusal to speak with an officer when an officer approaches him are not one and the same." *Timmsen*, 2016 IL 118181, ¶ 15 (the defendant's U-turn upon encountering a police roadblock was the opposite of going about his business and constituted evasive behavior to be considered as one of the circumstances contributing to a reasonable suspicion analysis).

¶ 17    The defendant primarily relies on two cases. The defendant first discusses *In re Rafeal E.*, 2014 IL App (1st) 133027. In that case, officers were patrolling an area known to be a "high narcotics location" when they observed the respondent standing and talking with four to six other

5

individuals near an alley. *Id.* ¶¶ 4, 6. The respondent looked in the officers' direction and then began to walk briskly in the opposite direction. *Id.* An officer drove parallel to the respondent, asked him to stop, and the respondent complied. *Id.* The officer asked him to take his hands out of his pockets and the respondent lifted his hands in the air, causing his shirt to raise, and reveal a plastic bag protruding from his waistband. *Id.* The officer recovered the bag which was suspected to be crack cocaine. *Id.* The circuit court denied the respondent's motion to dismiss. *Id.* ¶ 9. On appeal, the First District found that the seizure was not supported by reasonable suspicion and reversed the denial of the motion to suppress because (1) there was no evidence that the police suspected the respondent of committing any narcotics transactions, (2) nothing about the defendant's activity suggested criminal activity, and (3) the defendant walking away from the police did not constitute flight. *Id.* ¶¶ 29-32.

¶ 18    The defendant next relies on this court's prior decision in *People v. Smith*, 331 Ill. App. 3d 1049 (2002). In that case, officers approached the defendant as he stood in front of a known drug house. *Id.* at 1051. The officers asked the defendant what he was doing, to which he responded that he was waiting for his cousin. *Id.* The officers asked the defendant what he had in his pockets and the defendant became nervous and began to back away. *Id.* The officers then demanded that the defendant stop and remove his hands, but the defendant continued to back away with his hands in his pockets. *Id.* The officers grabbed the defendant, forced him to the ground, and arrested him. *Id.* A subsequent search revealed that the defendant had cocaine in his possession. *Id.* The circuit court denied the defendant's motion to suppress. *Id.* On appeal, this court found that the encounter was initially consensual but escalated into a seizure when the police grabbed the defendant. *Id.* at 1053-54. Further, this court found that the officers' actions were unjustified because the facts available to them, including the defendant backing away, did not create a reasonable suspicion of

6

criminal activity. *Id.* at 1054-56. Therefore, we reversed the circuit court's denial of the defendant's motion to suppress. *Id.* at 1056.

¶ 19    We find the defendant's reliance on these cases to be misplaced. First, the officers in this case were in the same area as the defendant because they were attempting to locate a white male on a felony warrant. The officers' presence was clear as they were in uniform and arrived in marked patrol vehicles. Second, Rasmussen saw the defendant run around the corner and, when the defendant saw him, the defendant turned around to run in the opposite direction. See *People v. Thomas*, 198 Ill. 2d 103, 113 (2001) (unprovoked flight in the face of a potential police encounter may raise enough suspicion to justify the ensuing pursuit and investigatory stop). The flight was evasive and rose to a level greater than simply refusing to interact with the police. Rasmussen then saw that the defendant's hand was behind his back and he was reaching toward his back right pocket. See *Timmsen*, 2016 IL 118181, ¶ 14 (a person's strange movements in attempt to evade police officers contribute to a finding of reasonable suspicion). Although a person could place their hands in their pockets for an innocuous reason, such as to keep warm or locate their identification, a commonsense approach says that the same cannot be said for a person intentionally running in the opposite direction of the police. See *People v. Shipp*, 2015 IL App (2d) 130587, ¶ 44; see also *Wardlow*, 528 U.S. at 125 (reasonable suspicion determinations must be made on commonsense judgments and inferences about human behavior). Rasmussen then announced that he was the police and ordered the defendant to stop. The defendant proceeded to run but eventually faced Cheuk, slowed to a walk, and was restrained. These facts, taken together, support a finding that Rasmussen had reasonable, articulable suspicion that criminal activity was afoot, and therefore, the *Terry* stop was lawful.

¶ 20    The defendant also argues that the officers lacked probable cause to arrest him. Following

the lawful *Terry* stop, the officers handcuffed the defendant while they conducted a protective search. The defendant argues that he was arrested at this time. An arrest occurs when a reasonable person, innocent of any crime, would conclude that he was not free to leave. *People v. Lopez*, 229 Ill. 2d 322, 346 (2008). There are many factors that are considered when determining whether a reasonable person would have felt free to leave: the intent of the officer, the understanding of the defendant, whether the defendant was told he was free to leave or that he was under arrest, whether the defendant would have been restrained if he attempted to leave, the length of the interrogation, and whether *Miranda* warnings were given. *Id.* Handcuffing does not automatically transform a *Terry* stop into an illegal arrest and its propriety depends on the circumstances of each individual case. *Colyar*, 2013 IL 111835, ¶ 46.

¶ 21    Here, placing the defendant in handcuffs alone did not constitute an arrest. The officers properly detained the defendant pursuant to a *Terry* stop and the handcuffs were used to carry out the detention in a safe and effective manner. At that point, the defendant had already fled from the police and reached toward his pockets in a furtive and strange manner. "It would make no sense under the law to grant an officer the authority to properly detain an individual pursuant to an investigatory stop and yet deny the officer the use of force necessary to carry out that detention in a safe and effective manner." *People v. Johnson*, 387 Ill. App. 3d 780, 791 (2009). During the protective search, the officers found methamphetamine, which provided probable cause to arrest. The court did not err when it denied the defendant's motion to suppress evidence.

¶ 22                                III. CONCLUSION

¶ 23    For these reasons, the judgment of the circuit court of Knox County is affirmed.

¶ 24    Affirmed.