THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIE COLLINS, JR., Defendant-Appellant.

Second District No. 2—87—0811

Opinion filed May 4, 1989.

G. Joseph Weller, Theodore A. Gottfried, and Robert E. Davison, all of State Appellate Defender's Office, of Springfield, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Willie Collins, Jr., appeals from a conviction of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). Collins argues that the trial court erred in denying his motions to quash his arrest and suppress certain evidence. We affirm.

Cornelius Murphy was stabbed to death on the evening of March 23, 1987. Collins was known to be Murphy's friend. On March 24, 1987, Collins received a phone call from a police officer. The officer asked Collins to come down to the police station and answer some questions. Collins arrived at the station and spoke with the police in the lobby. Collins was not informed of his *Miranda* rights. Collins made an exculpatory statement and left the station.

The next day, March 25, Collins was again contacted by the police. Police detectives went to defendant's home at approximately 11 a.m. Collins' roommate answered the door and informed the officers that defendant was sleeping. She went upstairs and woke the defendant. The officers asked Collins if he would come to the police station to answer some questions and be fingerprinted. Collins agreed to accompany the officers to the station. Collins rode with the officers in a police car. Collins was never frisked or handcuffed by the officers.

Collins arrived at the station at approximately 11:15 a.m. Collins agreed to be fingerprinted and photographed and was then escorted to an interview room. Collins was advised of his *Miranda* rights at approximately 11:40 a.m. and orally waived them. Collins repeated the exculpatory statement he had given the previous day, stating he was not at the victim's home on March 23.

At approximately 1:15 p.m., the detectives stepped out of the interview room to speak with another officer. The detectives were informed that defendant's fingerprint matched one found at the scene of the crime. The detectives informed Collins of this fact. Collins then admitted that he had been at the victim's home and stated that Ben Glover stabbed the victim. Defendant's first written statement was

prepared, and Collins signed it at approximately 5:30 p.m. At 6 p.m., the officers provided defendant with some pizza and soft drinks.

At approximately 6 p.m., the two detectives met with other officers who had interviewed other witnesses, including Ben Glover. The detectives were informed that Ben Glover stated that Collins stabbed the victim. Collins was again advised of his rights, and he signed a waiver form. The officers then informed Collins that Glover had indicated that it was Collins who stabbed the victim. Collins then admitted that he did in fact stab the victim. A second statement was prepared and Collins signed it at approximately 8:15 p.m. On several occasions throughout the questioning, Collins left the interview room, unaccompanied by police, to use the rest room down the hall.

The case proceeded to trial as a stipulated bench trial. Defendant made motions to quash the arrest and to suppress any evidence obtained pursuant to this arrest. These motions were denied. The court found that the defendant was not under arrest until after his first written statement and before his second and, therefore, the evidence was properly obtained and admitted. Defendant was convicted of murder and sentenced to 20 years' imprisonment.

Defendant contends on appeal that he was subjected to an illegal arrest. Specifically, defendant argues that he was arrested without a warrant and in the absence of probable cause. Therefore, any evidence derived thereafter is tainted and should have been suppressed. Defendant's arguments on appeal regarding the motions to suppress are premised on the fact that an illegal arrest took place. Therefore, the issue on appeal is focused on the trial court's findings regarding defendant's arrest and surrounding circumstances.

Defendant alleges that he was subjected to a custodial detention that was indistinguishable from a traditional arrest. Defendant also argues that this arrest did not take place after his first statement but occurred sometime prior to the statement in the absence of probable cause. Defendant does not state specifically when he believes the arrest took place.

■■■ A trial court's ruling on a motion to quash an arrest and suppress evidence will not be overturned unless it is manifestly erroneous. (*People v. Stoica* (1987), 163 Ill. App. 3d 660, 668.) An arrest occurs when a person is actually restrained or submits to police custody. (*People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 694, citing *People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 156; see also Ill. Rev. Stat. 1987, ch. 38, par. 107—5.) An arrest is a seizure, and a seizure occurs within the meaning of the fourth amendment only when a reasonable person, innocent of any crime and in view of all the circumstances

surrounding the incident, would believe that he was under arrest or not free to leave. (*People v. Longoria* (1983), 117 Ill. App. 3d 241, 248-49, citing *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877.) In the absence of a threatening presence of officers, display of a weapon, a physical touching, or use of language or tone of voice which indicates compliance with the officer's request might be compelled, a seizure has not taken place. (*People v. Sanders* (1981), 103 Ill. App. 3d 700, 709.) The officer's intent and the understanding of the arrestee are two essential elements in the definition of arrest. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 165.) The accepted test of understanding is not what the arrestee thought, but " 'what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' " *Wipfler*, 68 Ill. 2d at 166, quoting *Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158, 161.

 █ In the case at bar, defendant was asked to accompany the officers to the police station. The officers testified that they would not have forced defendant to accompany them had he refused. The officers allowed defendant to wash and have some juice before leaving his home. Defendant was not handcuffed at any time. There was no display of weapons or physical contact of any kind. The record does not indicate that the language used by the officers or their tone of voice was suggestive of an arrest. The officers' testimony indicates that their intention in questioning defendant was not to gain admissions on which to predicate probable cause and arrest the defendant. Their intent was to question a friend of the deceased to see if he might be able to provide some leads.

Furthermore, a reasonable man, innocent of any crime, would not have thought he was under arrest or not free to leave. Defendant was able to leave the interview room on several occasions to use the rest room. He was never escorted by an officer. As previously stated, defendant was not handcuffed at any time. Defendant argues that since he was fingerprinted, photographed and read his *Miranda* rights, all indicia of arrest, a reasonable person would not have felt free to leave. However, when looking at the totality of the circumstances, we conclude that the trial court was not manifestly erroneous in determining that defendant was not arrested until after his first statement.

Defendant contends that our supreme court's decision in *People v. Townes* (1982), 91 Ill. 2d 32, is dispositive of this case. In *Townes*, the defendant was taken to the police station for questioning. The defendant's name was on a list of suspects. He was interrogated repeatedly

over a 12-hour period. He was read his *Miranda* rights prior to each interview. He was asked to accompany the officers to a hospital to get head and pubic hair samples and fingernail scrapings. The court, citing *Dunaway v. New York* (1979), 442 U.S. 200, 212, 60 L. Ed. 2d 824, 836, 99 S. Ct. 2248, 2256, stated:

> "Further, as in *Dunaway*, the seizure of defendant without probable cause had an improper ' "quality of purposefulness," ' in that it appears to have been an ' "expedition for evidence." ' (442 U.S. 200, 218, 60 L. Ed. 2d 824, 839, 99 S. Ct. 2248, 2259, quoting *Brown v. Illinois* (1975), 422 U.S. 590, 605, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262.) The circumstances indicate that the officers interrogated the defendant in the hope of obtaining sufficient information upon which to predicate the probable cause necessary for an arrest." *Townes*, 91 Ill. 2d at 37-38.

In the case at bar, unlike in *Townes*, the officers did not suspect defendant committed the crime under investigation. This is not a case where officers are fishing for evidence that would be sufficient to establish probable cause to arrest the defendant. The officers were simply questioning a friend of the deceased to determine if he could shed some light on the investigation. There is no evidence that the officers suspected defendant until he was named as the murderer by a third party. This is the time that the trial court concluded an arrest had occurred. We find the facts in *Townes* to be distinguishable.

Defendant also contends that the fact that he was questioned informally on March 24 has a bearing on whether he was under arrest on March 25. We disagree. The intentions of the officers did not change from the 24th to the 25th. There is no evidence that defendant was in any way a suspect when the officers arrived at his home on March 25. The fact that prior informal questioning took place may have an impact on whether a reasonable person thought he was free to leave. However, in this case, we feel the totality of the circumstances still establishes that a reasonable man would not have thought he was not free to leave.

Defendant's next argument is that he was subjected to an illegal custodial interrogation that amounted to an arrest. As in determining whether an illegal arrest occurred, determining whether an illegal custodial interrogation took place is based upon whether a reasonable person, innocent of any crime, would believe he was not free to leave. (See *People v. Finklea* (1983), 119 Ill. App. 3d 448, 452.) The factors to be considered are the same in both analyses. Therefore, we need not discuss all the cases cited by defendant. The factors set forth by defendant have been reviewed in our analysis as to whether an arrest

occurred. This analysis is equally applicable to whether defendant was subjected to an illegal custodial detention or an unlawful arrest.

We find that the trial court was not manifestly erroneous in determining that defendant was not arrested until after his first statement.

For the above reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

DUNN and LINDBERG, JJ., concur.