THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD BOOTH, Defendant-Appellant.

First District (4th Division)    No. 1—92—0113

Opinion filed June 23, 1994.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury found the defendant guilty of armed robbery and the murder of Mark Davies. The trial court sentenced the defendant to 30 years in prison. He appeals and argues: (1) the juvenile court abused its discretion when it transferred him from the juvenile system to be tried as an adult; (2) the juvenile court erred by shifting the burden to the defendant to prove he would be rehabilitated within the time allowed under the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*); (3) the trial court erred in denying a motion to quash arrest and suppress evidence; (4) the court erred in not allowing the investigating detective to testify whether the defendant was in custody; (5) an assistant State's Attorney testifying as a witness made two improper comments bolstering his credibility; (6)

the State improperly argued in rebuttal that defendant was being tried as an adult; and (7) his sentence was an abuse of discretion. We affirm.

The defendant, Paul Williams, and David Williams beat, robbed, and left Mark Davies to die in the Jackson Park lagoon on June 27, 1987. The defendant was 14 years and 10 months old. The next day Samuel Lane was also beaten and robbed near the lagoon. Paul and David Williams were arrested for the attack on and robbery of Samuel Lane. They told the police the defendant was with them.

Detectives Kutz and Romic went to the defendant's home on July 8, 1987, to question him about the Lane incident. He was not home, but his mother spoke with the detectives. Kutz told Mrs. Booth he wanted to ask her son about a robbery committed in the area. Mrs. Booth said she would bring her son to the police station the next day around 2 p.m. Mrs. Booth and the defendant arrived at the station at 12:45 p.m. the next day. The detectives were not there, so Mrs. Booth and the defendant waited until they arrived at 2 p.m.

Detectives Kutz and Romic took Mrs. Booth and the defendant to an interview room and offered them coffee. Kutz advised the defendant of his *Miranda* rights and his right to have his mother or a youth officer present. Kutz then asked if he wanted to talk about the robbery at Jackson Park. The defendant agreed but did not want to speak in front of his mother, so the detectives brought him into the main office where they worked. Mrs. Booth was able to watch the defendant from the interview room.

Kutz asked the defendant who was present when Paul and David Williams robbed the man at the Jackson Park lagoon. The defendant said he and two others were present. He knew where one of them lived and agreed to show the detectives where. The detectives told Mrs. Booth that the defendant was going to show them where another witness, Darren Perkins, lived. Mrs. Booth had an appointment at 6:25 p.m. and gave the detectives the address so they could take the defendant there if they finished the investigation early. The detectives then drove with the defendant to Darren Perkins' home. They told Perkins they wanted to ask him about a robbery at Jackson Park, and he agreed to go to the police station with them.

They arrived back at the station after 6 p.m. Mrs. Booth had gone. The detectives put the defendant and Perkins in separate interview rooms. They spoke with Perkins first. When he described the robbery of Samuel Lane, the detectives realized that the defendant had been describing a different incident. They again advised the defendant of his *Miranda* rights and his right to have his mother or a youth officer present. The defendant said he understood and wanted

neither present. He then identified a photograph of Mark Davies as the man he and Paul and David Williams beat and robbed. The detectives arrested the defendant at 7:15 p.m.

The defendant later made a court-reported statement. An assistant State's Attorney, along with Detective Kutz and two youth officers, was present. The defendant stated that he, David Williams, and Paul Williams went to the Jackson Park bridge with baseball bats on June 27, 1987, "to rob some fags." When Mark Davies walked on the bridge they beat him with their fists and the baseball bats. David and Paul Williams went through Davies' pockets and carried him under the bridge. But Davies was making noises, so the defendant went under the bridge and hit Davies again with a baseball bat. All three tried to leave in Davies' car, but could not start it. When they walked back to the bridge the defendant saw Davies, bleeding and "trying to get afloat on the water." They then put the bats in a bush and left.

Following a transfer hearing, the juvenile court granted a State motion to prosecute the defendant as an adult. The trial court denied a motion to quash arrest and suppress evidence. A jury found the defendant guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)), and the court sentenced him to 30 years in prison.

The defendant first contends on appeal that the juvenile court abused its discretion when it ruled that he should be prosecuted as an adult under the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 et seq.). Section 702—7(3)(a) of the Act directs the court to consider six elements to determine whether to permit prosecution of a minor as an adult. They include:

"(1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)(a).

●1 We will not reverse a juvenile court decision to transfer absent an abuse of discretion. (*People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.) With regard to the first three elements the juvenile court stated, "There is no doubt that there was enough evidence pres-

ent for the grand jury to have an indictment. It was done in an aggressive and premeditated manner. *** [A]lthough it happened when [defendant] was 14, had it happened two months later, he would automatically be transferred to the adult division." (See *People v. Seals* (1987), 153 Ill. App. 3d 417, 505 N.E.2d 1107 (court upheld minor's transfer and noted that he was just two months short of 15 when the crime occurred).) The court's analysis is consistent with the record.

With regard to elements four through six, evidence at the transfer hearing showed that the defendant had no criminal history. But, his school record for eighth grade showed he was truant 32 days, tardy 21 times, and had 17 excused absences. He earned four grades of F, seven Ds, one C, and one B. His teacher described him as mischievous. Mrs. Booth testified that she had to discipline him when he stayed out all night with David and Paul Williams against her instructions. The defense offered testimony from a probation officer who recommended that the defendant remain in the juvenile system. But, when the State asked the probation officer if incarcerating the defendant for 30 months, the minimum for murder under the Juvenile Court Act, would protect the public's safety, the officer answered, "No."

Based on the testimony, the court found, "There are juvenile facilities available to [defendant]. The only problem I have, *** in the State of Illinois, a juvenile court judge does not have determinate sentencing. I have no assurance and there is none given me that his behavior will be turned around in the time allowed by the statute, ***." The defendant quotes this statement and argues that the court's "exclusive reliance on one factor was error." The part of the court's ruling quoted earlier in this opinion shows that the defendant's allegation is incorrect. The court heard evidence of each element and then analyzed and balanced the testimony, finding the last to tip the scale in favor of transfer. As the supreme court stated in *Taylor*, "while no formal statement of reasons or conventional findings of fact are necessary, the juvenile judge must take care to preserve a record sufficiently explicit so that his exercise of discretion may be reviewed meaningfully." (*Taylor*, 76 Ill. 2d at 301, 391 N.E.2d at 371.) That was done here. There is nothing in the record to find an abuse of the court's discretion.

●2 Nor do we agree with the defendant's argument that the court "shift[ed] the burden of proof to the minor to prove with certainty that he will be rehabilitated within a fixed period of time." The State presented evidence through the probation officer that the juvenile system of rehabilitation and incarceration was inadequate to protect the public from the defendant. The court noted that no contrary evi-

dence was presented. This did not shift the burden, but rather stated the evidence.

The defendant next argues that the trial court erred when it denied his motion to quash arrest and suppress evidence. He contends that he was involuntarily detained in violation of *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248. The trial court ruled that the defendant was voluntarily at the station and not in custody until he implicated himself in the crime. The court noted that the defendant and Mrs. Booth came to the police station at Mrs. Booth's convenience. They then voluntarily waited for more than an hour for the detectives to arrive. The defendant was separated from his mother only at his own request. Mrs. Booth was able to watch while the detectives spoke with her son.

The defendant argues that the reading of *Miranda* rights coupled with not being told he was free to go and his inexperience with police procedures amounted to an arrest before he implicated himself.

A trial court's ruling on the time of arrest will not be reversed unless manifestly erroneous. (*People v. Rimmer* (1985), 132 Ill. App. 3d 107, 476 N.E.2d 1278.) An arrest occurs when a reasonable person, innocent of any crime and in view of the circumstances surrounding the incident, would believe he was under arrest or not free to leave. (*People v. Collins* (1989), 182 Ill. App. 3d 362, 364, 538 N.E.2d 781, 783.) Elements to consider when determining if an arrest occurred include the presence or absence of a formal declaration of arrest and other routine procedures associated with an arrest, such as handcuffing, fingerprinting, and photographing. *People v. Clay* (1984), 124 Ill. App. 3d 140, 148, 463 N.E.2d 929, 936.

•3 In addition to elements noted by the trial court, relevant here is that the defendant was not handcuffed, searched, fingerprinted, or photographed. No weapons were displayed by the police. When he was not speaking with the detectives, the defendant was left unsupervised in an unlocked room. The detectives did not tell the defendant he was free to leave, but they did not say he was not free to leave. The defendant voluntarily agreed to ride with the detectives and show them where another witness lived. When the detectives questioned the defendant they informed him of his right to have his mother or a youth officer present. He wanted neither present. We find the trial court's ruling that an arrest did not occur until the defendant implicated himself is not manifestly erroneous.

•4 We further reject defendant's contention that the court improperly sustained the State's objection when defense counsel asked Detective Kutz whether the defendant was free to leave at any time during the interrogation process. The test is objective rather

than subjective. It is irrelevant whether the police intended to detain the defendant unless that intent is conveyed to the defendant. (*People v. Seawright* (1992), 228 Ill. App. 3d 939, 961, 593 N.E.2d 1003, 1017-18.) An officer's knowledge or beliefs bear upon the custody issue only if conveyed, by word or deed, to the individual questioned. (*Stansbury v. California* (1994), 511 U.S. ___, 128 L. Ed. 2d 293, 114 S. Ct. 1526.) The defendant fails to show that the detectives conveyed intent, so the objection to the question was properly sustained as irrelevant.

●5 We find defendant waived the next two issues in his appeal because he did not raise them in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We decline to apply the plain error rule since none of the alleged errors affected defendant's substantial rights and the evidence was not closely balanced. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Carrizales* (1992), 240 Ill. App. 3d 893, 608 N.E.2d 30.

Finally, we address whether the sentence is excessive. The defendant argues that the "trial court failed to properly balance the purposes of incarceration in sentencing Edward Booth to thirty years in prison." The record does not support defendant's argument.

The court noted in mitigation that the defendant was "relatively very young," "had no prior criminal record," and "was a follower in this enterprise, and not a leader in this assault." In aggravation the court found that the murder happened because the defendant believed the victim was of a different sexual orientation than his, the murder was exceptionally brutal and coldblooded, the defendant armed himself with a dangerous weapon and went to Jackson Park to rob. The court stated, "The youthfulness of the defendant is offset by the total brutality of this crime, and by the intentional engagement in this criminal act. Primarily, because the defendant perceived the decedent had a different sexual persuasion, different sexuality."

●6 When a sentence is within the statutory guidelines, we will not reduce it unless the court abused its discretion. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) We find none.

Affirmed.

JOHNSON and THEIS, JJ., concur.