# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Surles*, 2011 IL App (1st) 100068

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL SURLES, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-0068 |
| Filed | December 21, 2011 |
| Rehearing denied | February 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for violating the armed habitual criminal statute, the appellate court held that the trial court erred in denying his motion to suppress the weapon discovered on his person after the car in which he was riding was stopped for failing to come to a complete stop at a stop sign and the occupants of the car were handcuffed and subjected to pat-down searches, since defendant was under arrest before he was searched, his freedom of movement was restricted by the handcuffs and the show of authority of the six officers and three squad cars present at the scene of the stop, the mood of the encounter was akin to an arrest, but no probable cause existed for defendant's arrest where the arresting officer was not familiar with defendant, defendant was not acting as if he had done anything illegal, defendant was only a passenger in a vehicle whose driver failed to make a complete stop, and where there was no basis to search defendant, the revolver was not subject to the inevitable discovery exception to the exclusionary rule. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-10139; the Hon. John A. Wasilewski, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Unsinn, and Christopher Kopaz, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald and Samuel Shim, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE SALONE delivered the judgment of the court, with opinion. Presiding Justice Steele concurred in the judgment and opinion. Justice Murphy specially concurred, with opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Darrell Surles was found guilty of multiple charges surrounding his possession of a revolver. The trial court merged its findings into a single conviction for violating the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2008)), predicated on two of defendant's prior convictions for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon by a felon. Defendant filed a timely motion for a new trial, which was denied. On appeal, defendant contends that the trial court erred in denying his motion to suppress where: (1) he was placed under arrest without probable cause when he was handcuffed; or alternatively, (2) he was subjected to an unlawful *Terry* stop and frisk because the officer had no reasonable articulable suspicion that defendant was armed. For the following reasons, we reverse defendant's conviction and remand the matter for a new trial, with instructions.

¶ 2                                    BACKGROUND

¶ 3    Prior to trial defendant moved for the revolver recovered from his person to be suppressed because it was obtained as the result of an illegal search. During the hearing on defendant's motion, Chicago police officers McGrew and Solana testified as to their encounter with defendant on May 6, 2008.

¶ 4    Officer McGrew stated that he was on duty with his partner in a marked squad car on May 6, 2008, at approximately 6:40 p.m., when his partner, Officer Jesse, curbed a late-model four-door sedan for failing to stop at a stop sign near 407 West 57th Street, in Chicago. The officers approached the vehicle, which was occupied by three males who were described as all being in their twenties. Shortly after the vehicle was curbed, four additional officers, including Officer Solana, arrived on the scene to assist with the stop. Officer McGrew testified that the area was a high-crime area and that there had been an increase in

shootings in the preceding month due to a dispute between factions of a local street gang. He approached the vehicle from the passenger side, while his partner simultaneously approached from the driver side. McGrew could not recall whether his weapon was drawn, but he believed that he had his hand on it as he approached the vehicle.

¶ 5 Defendant was in the front passenger seat of the vehicle and remained there while Officer Jesse questioned the driver. Officer Jesse asked the driver to exit the vehicle after he was unable to produce a valid driver's license. At that point the driver was placed under arrest and the officers decided to inventory the vehicle. As a result, defendant and the other passenger were ordered out of the car.

¶ 6 Officer McGrew testified that he placed the rear passenger in handcuffs for McGrew's own personal safety and passed him to Officer Solana for a protective pat-down search. He then ordered defendant out of the vehicle and handcuffed him behind his back before passing defendant to Officer Solana. Officer McGrew stated that he did not have a clear view of defendant's front before he handcuffed him because defendant exited the vehicle with his back toward him. He stated that he did not see the handgun before he handcuffed defendant and that anywhere from 90 seconds to 4 minutes passed from the time the vehicle was stopped until the revolver was recovered.

¶ 7 At the time that he handcuffed defendant, Officer McGrew testified that there was a total of six officers on the scene, including himself, and that the other two occupants of the vehicle were already handcuffed. According to Officer McGrew, "[u]ntil we figure out what's going on we put him in handcuffs." Officer McGrew went on to state that due to the reported increase in violence in the area he felt a heightened level of concern for his safety with every traffic stop in that area.

¶ 8 He stated that other than the gang violence in the area, defendant gave him no reason to believe that defendant would harm him prior to placing him in handcuffs. He "want[ed] to play everyone safe." He was not familiar with the vehicle nor its occupants before the traffic stop on May 6, 2008. When they curbed the vehicle, he did not have a search warrant for the vehicle nor any arrest warrants for the occupants of the vehicle. In addition, he stated that he did not observe either of the passengers doing anything illegal, improper, or threatening, before he handcuffed them.

¶ 9 Officer Solana also testified to the events surrounding defendant's arrest. He was positioned at the rear passenger side of the vehicle while Officers McGrew and Jesse conducted the traffic stop. Once defendant stepped out of the vehicle Officer McGrew handcuffed him, held his arm, and walked him to Officer Solana. Officer Solana described observing a "slight bulge" that he approximated to be two or three inches long on the right side of defendant's waistband under his shirt. Upon performing the pat down of defendant he felt that the object was hard and believed it was a weapon. Officer Solana then lifted defendant's shirt and observed it was a small revolver.

¶ 10 Defense counsel questioned Officer Solana regarding his basis for the pat-down search and the following colloquy occurred:

"Q. At the point that Officer McGrew handed him off to you, did you feel in danger from Mr. Surles?

A. We don't know who these people are. We do protective pat downs on basically everybody. We don't know if he's got a weapon or not. Like I said, I saw the bulge. I believe it to be a weapon so.

Q. Do you consider this a dangerous area?

A. It was an extremely dangerous area at the time. It was shootings everyday.

* * *

Q. Apart from this lump or bulge you saw at the waistband of Mr. Surles anything else; was his conduct anything that would make you nervous or afraid?

A. No."

¶ 11 Officer Solana further testified that he decided on his own to do the pat down search once he saw the bulge in defendant's pants. Once he saw the bulge in defendant's waistband he felt afraid for his safety because he thought that it could be a gun, based on all of the shootings in the area. The trial court then questioned Officer Solana regarding the amount of light at the time of the search, and he stated that he had no difficulty seeing, because the sun was just starting to go down.

¶ 12 Following argument, the trial court concluded that the essential issue to be resolved was whether the handcuffing of defendant was premature. The trial court found that the area was a war-like zone and likened it to Afghanistan or Iraq, before concluding that the handcuffing of defendant was inconsequential because the officers would have discovered the handgun in defendant's waistband during the pat down search without him being handcuffed. On this basis, the trial court denied defendant's motion to suppress.

¶ 13 Thereafter, defendant waived his right to a jury trial and proceeded in a stipulated bench trial with the State admitting the officers' testimony from the motion to suppress into evidence along with a certified copy of defendant's criminal record, which included prior convictions for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon. The trial court found defendant guilty on all counts and merged the convictions to the single count of armed habitual criminal. Defendant was then sentenced to seven years' imprisonment. Defendant filed a motion for a new trial which did not reference the trial court's denial of the motion to suppress as a claim of error.

¶ 14 DISCUSSION

¶ 15 On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence, where: (1) he was placed under arrest without probable cause when he was handcuffed; or alternatively, (2) he was subjected to an unlawful *Terry* stop and frisk because the officer had no reasonable suspicion that defendant was armed. The State responds that defendant forfeited this argument by failing to include it in his posttrial motion and that the officers' conduct was lawful based on their safety concerns. Defendant replies that the issue should be reviewed for plain error.

¶ 16 *Forfeiture and Plain Error*

¶ 17 Initially, we note that the State is correct that defendant failed to include this issue in his

-4-

posttrial motion. That does not end our analysis, however, where defendant claims that plain error occurred. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The plain-error doctrine allows a reviewing court to bypass normal forfeiture principles and consider unpreserved errors where the evidence is closely balanced, regardless of the seriousness of the error, or where the error was serious, regardless of the closeness of the evidence. *Herron*, 215 Ill. 2d at 187. Defendant claims that the seriousness of the error and not the closeness of the evidence warrants plain-error review. We agree.

¶ 18    Where, as here, defendant failed to properly preserve an issue of his substantial constitutional rights for review, plain-error analysis is applicable. *People v. Starnes*, 273 Ill. App. 3d 476, 481 (1995). Given that defendant's constitutional rights against search and seizure are at issue, we find it proper to subject the trial court's determination to plain-error review. *Starnes*, 273 Ill. App. 3d at 481. We now address defendant's substantive contentions of error.

¶ 19                            *Type of Police-Citizen Encounter*

¶ 20    We first address defendant's contention that the trial court erred in denying his motion to suppress where he was unlawfully arrested when Officer McGrew placed him in handcuffs. We review the denial of a motion to suppress with deference to the trial court's findings of fact, but the ultimate legal conclusion *de novo*. *People v. Lopez*, 229 Ill. 2d 322, 345 (2008). Here, defendant does not contend that the trial court's findings of fact were erroneous, and instead claims that the trial court erred in reaching its legal conclusion.

¶ 21    This court has recognized three separate types of police-citizen encounters, which are: (1) consensual encounters, involving no detention and therefore not implicating a citizen's fourth amendment rights; (2) brief investigatory stops, referred to as *Terry* stops, which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) arrests, which must be supported by probable cause. *People v. Vazquez*, 388 Ill. App. 3d 532, 546-47 (2009) (citing *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006)). We find that defendant's encounter with the police was not a consensual encounter, where defendant was not seeking the assistance of the officers. *Vazquez*, 388 Ill. App 3d at 547.

¶ 22    Thus, we must determine whether defendant's encounter was a *Terry* stop, or an arrest, and whether the officers' conduct was appropriate under either situation. Given that the standard for placing a citizen under arrest requires a stronger basis, we begin our analysis with whether defendant was placed under arrest, for purposes of his fourth amendment rights, before he was searched by Officer Solana.

¶ 23    The United States and Illinois Constitutions prohibit the government from subjecting citizens to unreasonable searches and seizures. U.S. Const., Amends. IV, XIV; Ill. Const. 1970, art. I, § 6; *Lopez*, 229 Ill. 2d at 345. A person is seized in constitutional terms when he is placed under arrest. *Lopez*, 229 Ill. 2d at 346. An arrest occurs when a person's freedom of movement is restrained by physical force or a show of authority. *Vazquez*, 388 Ill. App 3d at 549. We determine whether a person is under arrest based on whether an objective reasonable person, innocent of any crime, would conclude that he is not free to leave under the circumstances. *Lopez*, 229 Ill. 2d at 346.

¶ 24    This court has recognized that there is no bright-line test for determining whether an encounter is a *Terry* stop or an arrest. *Vazquez*, 388 Ill. App 3d at 549. Instead, several factors have been analyzed, including, but not limited to: (1) the time, place, length, mood, and mode of the encounter; (2) the number of officers present; (3) use of handcuffs, weapons, or other formal restraint; (4) the intent of the officers; (5) whether the defendant was told he could refuse to cooperate or that he was free to leave; (6) whether defendant was transported by the police; and (7) whether defendant was told he was under arrest. *Vazquez*, 388 Ill. App 3d at 549.

¶ 25    Here, the evidence shows that defendant was an occupant in a vehicle stopped for a traffic violation. The encounter between defendant and the police lasted less than five minutes, in the evening on a public street, and defendant was not told he was under arrest. All of this weighs against finding that defendant was placed under arrest before he was searched.

¶ 26    The bulk of the evidence, however, weighs in favor of finding that defendant was under arrest before he was searched. Specifically, Officer McGrew testified that he approached defendant's side of the vehicle, either with his firearm drawn or with his hand on his firearm. He also stated that there were six officers, from three separate squad cars, present at the time. In addition, defendant was not asked any questions by Officer McGrew, but instead was given instructions to step out of the vehicle and immediately handcuffed behind his back. Defendant was not told that he could leave or refuse to cooperate, nor was he released after he was handcuffed. Instead, he was handed from Officer McGrew to Officer Solana, who then searched defendant's person. Thus, defendant's freedom of movement was restricted, both by physical restraints and the officers' show of authority.

¶ 27    We find that Officer McGrew approaching defendant with his weapon drawn or his hand on his weapon made the mood of the encounter more like an arrest. Further, the fact that defendant was ordered out of the vehicle while the officer had his hand on his firearm, and without any conversation, also would make a reasonable person feel restrained. Moreover, the fact that defendant was outnumbered by police officers, and the other occupants were already restrained, would decrease a reasonable person's feeling of freedom. After all of these things occurred, Officer McGrew placed defendant in handcuffs and kept hold of him until he was passed to Officer Solana. Thus, from the time defendant was placed in handcuffs, he was not free to move on his own. Given the show of force and authority by the officers and defendant's restraint, we conclude that defendant was arrested from the time he was handcuffed by Officer McGrew.

¶ 28    Having found that defendant was placed under arrest when he was handcuffed by Officer McGrew, we must now determine whether Officer McGrew had probable cause to arrest defendant, such that the subsequent search was lawful. As noted above, a warrantless arrest is unlawful absent probable cause. *People v. Robinson*, 167 Ill. 2d 397, 405 (1995). Probable cause to arrest exists where the facts known to the officer at the time would lead a reasonable person standing in his shoes to conclude that a crime has been committed and that defendant committed that crime. *People v. Jackson*, 391 Ill. App. 3d 11, 36 (2009); *People v. Lee*, 214 Ill. 2d 476, 489 (2005). The standard for determining whether probable cause exists rests on the probability that a crime was committed, which requires additional proof where there is

a question of whether any crime had been committed, in addition to the question of whether defendant committed the potential crime. *Lee*, 214 Ill. 2d at 484.

¶ 29 Turning to the facts that were known to Officer McGrew at the time that he arrested defendant, we find that no probable cause existed for the arrest. Officer McGrew testified that he was not familiar with defendant, nor was defendant acting in a way that led him to believe defendant had done anything illegal. The only information that Officer McGrew knew that was specific to defendant was that he was the passenger in a vehicle whose driver failed to make a complete stop at a stop sign. This alone is insufficient to warrant an arrest because there was no indication that defendant, a passenger in the vehicle, had committed or was about to commit any crime. By all accounts defendant obeyed the officers' instructions and his conduct was otherwise unremarkable. Moreover, both Officer McGrew and Officer Solana testified that nothing specific to defendant caused either of them to believe that defendant took part in any criminal activity. Thus, the record before us is devoid of any evidence of criminal activity on the part of defendant prior to his arrest. Absent such evidence, we must therefore conclude that Officer McGrew lacked probable cause to arrest defendant. *Lee*, 214 Ill. 2d at 485-86.

¶ 30 Whether evidence recovered subsequent to an unlawful arrest should be excluded, however, presents a separate question. To answer that question, we must decide whether the exclusionary rule is applicable under these facts.

¶ 31 *Exclusionary Rule and Terry Stop*

¶ 32 The exclusionary rule allows courts to prevent evidence from being used at trial which was gathered by police in violation of a defendant's fourth amendment rights. *People v. Sutherland*, 223 Ill. 2d 187, 227 (2006). This rule has an exception where the evidence would have inevitably been discovered without the police violation. *Sutherland*, 223 Ill. 2d at 227-28. Here, the trial court found that defendant was subject to a *Terry* stop and frisk regardless of whether he was handcuffed, such that the officer's recovery of the revolver was inevitable. For the reasons that follow, we disagree and instead hold that the evidence against defendant should have been excluded because he could not have been properly subjected to a *Terry* stop and frisk at any point during his encounter with the police.

¶ 33 First, we must determine whether defendant could lawfully be searched as a part of a *Terry* stop, such that he could have been subjected to a pat-down search. A *Terry* stop is a recognized exception to the probable cause requirement of the fourth amendment, which allows for an officer to detain a citizen where the officer has a reasonable articulable suspicion that a crime has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (codified in the Illinois Code of Criminal Procedure of 1963 as 725 ILCS 5/107-14 (West 2008)). Such a stop must, at its inception, be based on specific and articulable facts, which the officer can point to as a reasonable basis for such an intrusion. *People v. Thomas*, 198 Ill. 2d 103, 109 (2001). In this case, defendant does not contend that the officers lacked reasonable suspicion to detain the driver. Rather, defendant contends that he should not have been subjected to a protective pat-down search. Thus, our analysis begins with his encounter with the police after the vehicle was stopped.

¶ 34 We first conclude that neither defendant's presence in the vehicle which committed the minor traffic infraction nor his association with the driver who operated the vehicle without a license is sufficient to warrant a *Terry* pat-down search. See, *e.g.*, *Lee*, 214 Ill. 2d at 485-86 (holding that neither defendant's presence in a certain area nor his association with certain people was a crime, such that a stop on that basis alone was insufficient). Having so found, we now turn to the basis for defendant's pat-down search.

¶ 35 A police officer may perform a protective pat-down search where, after making a lawful stop, the officer has a reasonable articulable suspicion that he or another is in danger of attack because the defendant is armed and dangerous. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001); 725 ILCS 5/108-1.01 (West 2008). Such a search is not for the purpose of discovering evidence, but must be limited to a search for weapons. *Adams v. Williams*, 407 U.S. 143, 146 (1972); *People v. Davis*, 352 Ill. App. 3d 576, 580 (2004). Thus, we must determine whether the evidence known to the officers was sufficient to create a reasonable suspicion that defendant was armed and dangerous, such that a pat-down search was warranted. For the reasons that follow, we find that it was not and accordingly reject the trial court's conclusion that the revolver was not subject to the exclusionary rule based on inevitable discovery.

¶ 36 As noted above, the information available to the officers at the time was that a vehicle had failed to stop at a stop sign and its operator could not produce a valid driver's license. The State relies heavily on the fact that the stop occurred in a high-crime area, as a basis for the pat-down search. We find this argument unpersuasive. Instead we are guided by the principles articulated by our supreme court in *Lee*, wherein the court stated, "the fact, by itself, that the officers found defendant in a certain area, without any overt act by defendant, does not establish probable cause for warrantless arrest." *Lee*, 214 Ill. 2d at 486.

¶ 37 While we recognize that the holding in *Lee* was specific to probable cause, we find the reasoning to be appropriate here, where both the probable cause analysis and the *Terry* analysis require the court to view the circumstances as an objectively reasonable person, knowing the facts known to the officer at the time of the stop. Just as the supreme court in *Lee* found that a reasonable person would not have concluded that a crime was about to occur or had just occurred based solely on a person's mere presence in a high-crime area, we further find that a reasonable person would not consider a person armed and dangerous merely because he was a passenger in a vehicle traveling through a high-crime area. Instead, we hold that the basis for a pat-down search must be the danger that the specific defendant presents under the circumstances and not generalized concerns about the area where the defendant is engaged in a nonconsensual police encounter.

¶ 38 The fourth amendment protects each citizen against unwarranted searches and seizures, thus any intrusion into that protection must be warranted based on information specific to the citizen against whom the intrusion is made. To conclude otherwise, as the State suggests, would be to limit a private citizen's constitutional rights based on the neighborhood he or she happens to be in when the intrusion occurs. Such a standard would vitiate the fourth amendment by limiting its protections based on a locale, instead of the circumstances surrounding a private citizen. Moreover, the potential for abuse is apparent, where all citizens who reside in, or work, or travel through, visit, provide services for, or patronize businesses

in a high-crime area for any number of lawful reasons would be subjected to such intrusions. Therefore, we reject the State's position that the conduct of these officers was lawful.

¶ 39 This court has recently rejected the argument that testimony regarding a defendant's presence in a "high-crime area" is a legally sufficient basis for performing a *Terry* stop and frisk. *People v. Harris*, 2011 IL App (1st) 103382, ¶¶ 14-15. We join our brethren in rejecting such conclusory and self-serving statements, because they are overbroad and largely irrelevant, without some specific facts known to the police that tie defendant to the crime in the area.

¶ 40 Here, there was no such evidence. Neither officer testified to knowing anything about defendant other than that he was an occupant in the vehicle. Indeed, by their own testimony, his conduct did not create any fear or threat of violence against them. In fact, the testimony that they "do a protective pat down search on basically everybody" evinces the routine nature of their arresting and searching private citizens without any indication that the citizen poses a threat to anyone and without any articulable suspicion of criminal activity. The mere fact that he was present in a vehicle, which was traveling on a thoroughfare is insufficient to warrant such an intrusion into his constitutional protections. Further, this court has repeatedly rejected claims, as made by the State, that Officer Solana's observation of the bulge in defendant's waistband is an independent basis for the pat-down search, holding that the presence of a bulge in defendant's clothing alone is in sufficient to warrant a search. *People v. Goodum*, 356 Ill. App. 3d 1081, 1085 (2005); *Harris*, 2011 IL App (1st) 103382, ¶ 17.

¶ 41 Having concluded that neither defendant's presence in the high-crime area nor the bulge alone was sufficient to justify a pat-down search, we must also conclude that these two together are also insufficient, because "[w]hen you add nothing to nothing, you get nothing." (Internal quotation marks omitted.) *Lee*, 214 Ill. 2d at 486 (quoting *City of Chicago v. Youkhana*, 277 Ill. App. 3d 101, 114 (1995)). Thus, we conclude that there was no lawful basis to search defendant, and as a result, the revolver is not subject to the inevitable discovery exception to the exclusionary rule. Our ruling is no more intended to handcuff lawful police activity than endorse the unlawful handcuffing of private citizens. Accordingly, we find that the revolver and any mention thereof should have been excluded.

¶ 42 We need not consider whether double jeopardy would attach and the State could retry defendant, because our order requiring the suppression of the revolver and its taking from defendant's possession would "destroy any opportunity for the State to prevail on a new trial." *People v. Morgan*, 138 Ill. App. 3d 99, 102 (1985); see also *People v. Holliday*, 318 Ill. App. 3d 106, 113 (2001). Accordingly, we reverse defendant's conviction for violating the armed habitual criminal statute.

¶ 43                                                    CONCLUSION
¶ 44 For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

¶ 45 Reversed.

¶ 46      JUSTICE MURPHY, specially concurring:

¶ 47      I concur in the court's decision, but write separately to emphasize that our holding should not be interpreted in such a way as to endanger the safety of law enforcement officers. In setting forth the standard under which the validity of a *Terry* stop is to be analyzed, the Supreme Court considered the need of police officers to protect themselves and other prospective victims from violence and noted that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio*, 392 U.S. 1, 23-24 (1968). In light of that concern, an officer is permitted to perform a protective pat down search of an individual following a lawful stop where the officer has a reasonable articulable suspicion that either the officer or another person is in danger of attack because the individual is armed and dangerous. *People v. Sorenson*, 196 Ill. 2d 425, 432-33 (2001); 725 ILCS 5/108-1.01 (West 2008).

¶ 48      While I agree with the majority that such a reasonable articulable suspicion is lacking in this case, I wish to reaffirm the principle that it is unreasonable to require a police officer to take unnecessary risks in the performance of his duties. In addition, I would like to emphasize that this holding should not be interpreted in such a way as to have a chilling effect on the use of pat-down searches by law enforcement officers to ensure their safety or that of another person when necessary.

¶ 49      The evidence presented must show that the officer had a reasonable articulable suspicion that either the officer or another person is in danger of attack.